**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| SMART RF INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:26-cv-00789<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Smart RF Inc. ("Smart RF") files this Complaint against Defendants Samsung Electronics Co., Ltd. ("SEC"), and Samsung Electronics America, Inc. ("SEA") (collectively referred to as "Samsung" or "Defendant") for infringement of U.S. Patent No. 8,078,561 (the "'561 Patent"); U.S. Patent No. 9,621,236 (the "'236 Patent"); U.S. Patent No. 9,641,204 (the "'204 Patent"); U.S. Patent No. 10,958,296 (the "'296 Patent"); and U.S. Patent No. 12,647,142 (the "'142 Patent"), collectively, the "Asserted Patents."

## THE PARTIES

1. Smart RF Inc. is a Canadian business corporation located at 38 Royal Oak Drive, NW Calgary, AB, T3G 5P2, Canada.

2. On information and belief, Samsung Electronics Co., Ltd. ("SEC") is a corporation organized under the laws of the Republic of Korea, with its principal place of business at 129, Samsung-Ro, YeongTong-Gu, Suwon-Si, Gyeonggi-do, 443-742, Republic of Korea.

3. On information and belief, Samsung Electronics America, Inc. ("SEA") is a corporation organized under the laws of the State of New York, with its principal place of business

at 85 Challenger Road, Ridgefield Park, New Jersey 07660 and with an office located at 6625 Excellence Way, Plano, Texas 75023. SEA may be served with process through its registered agent for service in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4. SEA is a wholly owned subsidiary of SEC (SEC and SEA collectively referred to as "Samsung") and, on information and belief, is responsible for the marketing, sale, distribution, and support in the United States of Samsung's radio access network ("RAN") infrastructure, including the products accused of infringement in this case. SEA maintains regular and established places of business in this District, including a "flagship campus" at 6625 Excellence Way, Plano, Texas 75023.[1]

5. Samsung, either itself and/or through the activities of its subsidiaries, makes, uses, sells, offers for sale, and/or imports throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or uses methods covered by the Asserted Patents in the United States as further described below.

6. SEC and SEA have acted in concert with respect to the facts alleged herein such that any act of SEC is attributable to SEA, and vice versa.

**JURISDICTION AND VENUE**

7. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has specific and general personal jurisdiction over Samsung consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas

[1] Samsung, *Samsung Electronics America to Open Flagship North Texas Campus*, available at https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/.

Long Arm Statute because, *inter alia*, (i) Samsung has engaged in continuous, systematic, and substantial business in Texas; (ii) Samsung is registered to do business in Texas; (iii) Samsung maintains a regular and established place of business in this District; and (iv) Samsung has committed and continues to commit acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, and selling of RAN infrastructure, including base stations, baseband units, radio units, and related network equipment (collectively, "RAN Infrastructure") that leverage and infringe the inventions of the Asserted Patents (as more particularly identified and described throughout this Complaint, below) in this State and this District.

9. On information and belief, Defendant has purposefully and voluntarily placed, and is continuing to place, one or more Accused Instrumentalities into the stream of commerce through established distribution channels (including the Internet) with the knowledge and intent that the Accused Instrumentalities are and/or will be used, sold to, and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that the Accused Instrumentalities (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

10. Samsung maintains a "regular and established" place of business in this District, including by maintaining a physical presence in this District. Samsung's physical presence in this District includes, but is not limited to, maintaining a "flagship campus" in this District, located at 6625 Excellence Way, Plano, Texas 75023. The flagship campus includes, for example, its Networks Innovation Center, which helps Samsung and its partners optimize, test, and showcase

advanced network technologies, including 5G technologies.[2] And Samsung's flagship campus houses its "second biggest employee population in the U.S. across multiple divisions," including customer care, mobile research and development, and engineering.[3]

11. In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents. Samsung derives benefits from its presence in this District. For example, Samsung receives revenue by selling RAN Infrastructure to customers located in this District.

12. Samsung has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Samsung has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

13. Venue is proper as to SEC in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

---

[2] Samsung, *Samsung Networks Innovation Center Opens its Doors, Offering a Close Look at Advanced Network Connectivity*, available at https://www.samsung.com/global/business/networks/insights/blog/0613-samsung-networks-innovation-center-opens-its-doors-offering-a-close-look-at-advanced-network-connectivity/.

[3] Samsung, *Samsung Electronics America to Open Flagship North Texas Campus*, available at https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/.

14. Venue is proper as to SEA in this District pursuant to 28 U.S.C. § 1400(b) because, among other things, (i) SEA is subject to personal jurisdiction in this District; (ii) SEA has committed acts of patent infringement in this District; and (iii) SEA has regular and established places of business in this District. SEA maintains regular and established places of business in this District located at 6625 Excellence Way, Plano, Texas 75023.

15. Samsung has admitted or not contested proper venue in this District in other patent infringement actions, including when asserting its own patents in this District. *See, e.g.*, *Samsung Electronics Co. Ltd. & Samsung Electronics Am., Inc. v. Oura Health Oy*, No. 2:25-cv-01181, Dkt. No. 1 (E.D. Tex. Dec. 1, 2025); *Maxell, Ltd. v. Samsung Electronics Co., Ltd.*, et al., 5:23-cv-00092, Dkt. No. 25, at ¶ 24, 26 (E.D. Tex. Jan. 2, 2024); *G+ Communications, LLC v. Samsung Electronics Co., Ltd., et al.*, 2:22-cv-00078, Dkt. No. 18 (E.D. Tex. June 13, 2022); *Gesture Technology Partners, LLC v. Samsung Electronics Co., Ltd., et al.*, 2:21- cv-00040, Dkt. No. 220, at ¶ 6 (E.D. Tex. Jan. 28, 2022).

## BACKGROUND

16. As the cellular market's technology and generational demands evolve (from 2G and 3G to 4G, 5G, and beyond), the demand for a cellular carrier's base stations to consistently provide dependable signal quality, while simultaneously optimizing power efficiency, continues to rise.[4] The efficient operation of a base station's RF power amplifiers (PAs) is crucial to ensure this reliability.[5] This is due to the pivotal role that PAs play in signal transmission, serving as the vital

---

[4] *See* Samsung, *Upper Mid-Band Spectrum for 6G: Opportunities and Key Enablers*, available at: https://research.samsung.com/blog/Upper-Mid-Band-Spectrum-for-6G-Opportunities-and-Key-Enablers (discussing the continued evolution of cellular networks and the increasing importance of energy efficient cellular systems).

[5] *See* Samsung, *Towards 6G AI: AI-based Non-linearity Compensator*, available at: https://research.samsung.com/blog/Towards-6G-AI-AI-based-Non-linearity-Compensator (explaining that power amplifiers determine transmit power and coverage in wireless systems and are a key component of wireless transmitters).

link between generated signals and their effective broadcast to cellular devices and ensuring reliability amidst widely and rapidly changing conditions.

17. For example, when a base station generates an RF signal, it undergoes amplification through a PA before transmission via the antenna. This amplification is essential to ensure that the signal can reach its intended destination, covering the necessary distance and penetrating obstacles effectively. In an ideal scenario, the PA takes the input signal and efficiently transforms it into a higher-power signal proportionate to the input; it achieves this transformation with maximum power efficiency, converting most of the supplied DC power into useful signal output power.

18. However, achieving this ideal scenario poses a significant challenge for cellular carriers in the real world because PAs are inherently nonlinear.[6] When PAs operate near their maximum power levels, they introduce unintended non-linear distortions into the amplified signals. These distortions lead to signal quality degradation, heightened network operating costs, and regulatory concerns, especially regarding adjacent channel power ratio (ACPR) requirements. To address this, PAs must operate at a point significantly below their saturation level, resulting in notably low power efficiency,[7] often less than 10%. In these scenarios, over 90% of the DC power supplied to the amplifier is dissipated as heat.

19. Such operational constraints present significant challenges in the design and operation of cellular base stations, particularly in achieving reliable signal transmission while

---

[6] *See* "How DPD improves power amplifier efficiency," available at: https://www.5gtechnologyworld.com/how-dpd-improves-power-amplifier-efficiency/; Samsung, *Towards 6G AI: AI-based Non-linearity Compensator*, available at: https://research.samsung.com/blog/Towards-6G-AI-AI-based-Non-linearity-Compensator (explaining that commercial power amplifiers become increasingly nonlinear as input power increases).

[7] Samsung, *Waveform Enhancements for Energy Efficiency in 6G*, available at: https://research.samsung.com/blog/Waveform-enhancements-for-energy-efficiency-in-6G (explaining that 4G and 5G waveforms have high peak-to-average power ratios requiring power back-off to maintain linearity, thereby reducing power-amplifier efficiency).

maintaining power efficiency. To address these challenges, it is understood that digital pre-distortion hardware and software have become widely used in cellular base station infrastructure to linearize the power amplifiers used in these systems and improve overall performance. By enabling PAs to operate closer to saturation while maintaining acceptable linearity, DPD technology increases output power and improves power efficiency. [8]

20. In a typical communication system, the digital pre-distortion hardware and/or software processes each input signal independently to accurately predict and correct distortions introduced by the PAs in each path, including the cross-coupling between these paths. This precision ensures that signals, arriving from different paths and devices, undergo individualized optimization, improving both linearity and power efficiency. Digital predistortion ("DPD") tailors corrections to the unique characteristics of each signal path, facilitating the operation of multiple-input multiple-output ("MIMO") configurations and ensuring reliable and high-quality cellular communication services.

21. The Asserted Patents relate generally to improvements in wireless communication systems, including innovations directed to digital pre-distortion techniques used to improve amplifier linearity, power efficiency, and overall wireless communication system performance.

## **THE ASSERTED PATENTS**

22. Smart RF is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in and to the Asserted Patents, including the filing of this patent infringement lawsuit. Smart RF also

---

[8] *See* Samsung Research America, *AI/ML Optimized Modulations and Digital Predistortion for RF Impairments*, available at: https://sra.samsung.com/publications/ai-ml-optimized-modulations-and-digital-predistortion-for-rf-impairments.

has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

23. The ’561 Patent is entitled, “Nonlinear behavior models and methods for use thereof in wireless radio systems.” The ’561 Patent lawfully issued on December 13, 2011, and stems from U.S. Patent Application No. 11/999,264, which was filed on December 3, 2007.

24. The ’236 Patent is entitled, “System and method for distortion correction in MIMO and multiband transmitters.” The ’236 Patent lawfully issued on April 11, 2017, and stems from U.S. Patent Application No. 14/319,421, which was filed on June 30, 2014.

25. The ’204 Patent is entitled, “Digital multi-band predistortion linearizer with nonlinear subsampling algorithm in the feedback loop.” The ’204 Patent lawfully issued on May 2, 2017, and stems from U.S. Patent Application No. 14/467,642, which was filed on August 25, 2014.

26. The ’296 Patent is entitled, “Digital multi-band predistortion linearizer with non-linear subsampling algorithm in the feedback loop.” The ’296 Patent lawfully issued on March 23, 2021, and stems from U.S. Patent Application No. 15/583,343, which was filed on May 1, 2017.

27. The ’142 Patent is entitled, “Digital multi-band predistortion linearizer with non-linear subsampling algorithm in the feedback loop.” The ’142 Patent lawfully issued on June 2, 2026, and stems from U.S. Patent Application No. 17/207,614, which was filed on March 20, 2021.

28. The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

29. To the extent necessary, Smart RF has complied with the requirements of 35 U.S.C. § 287, such that Smart RF may recover pre-suit damages for the Asserted Patents.

**COUNT I**

(INFRINGEMENT OF U.S. PATENT NO. 8,078,561)

30. Plaintiff incorporates the preceding paragraphs herein by reference.

31. Smart RF is the assignee of the ’561 Patent, with ownership of all substantial rights, title, and interest in and to the ’561 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

32. The ’561 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 13, 2011, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

33. Defendant has infringed and continues to directly infringe one or more claims including at least claim 7 of the ’561 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure. Such infringement includes, but is not limited to, the making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure that leverage and infringe the inventions of the ’561 Patent (collectively, the "’561 Accused Instrumentalities"). For example, the ’561 Accused Instrumentalities utilize hardware and/or software implementing digital predistortion functionality, such as MaxLin DPD technology, that employs digital pre-distortion techniques covered by the ’561 Patent. The MaxLin DPD technology incorporates NanoSemi Linearizer Core technology. To the extent that the ’561 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC, FPGA, or other hardware or software

implementation that performs the same or substantially similar digital pre-distortion operations as those described below.[9]

34. On information and belief, by way of illustration only, Defendant, through its making, using, testing, selling, offering for sale, and/or importing into the United States the '561 Accused Instrumentalities, has satisfied and continues to satisfy each and every limitation of claim 7 of the '561 Patent. The '561 Accused Instrumentalities comprise a "predistorter for nonlinear wireless system." For example, the '561 Accused Instrumentalities comprise RAN Infrastructure, including base stations, such as eNodeBs and gNodeBs, radio units, and related network equipment, each of which includes a transmitter that corrects for nonlinearities in the transmit path via DPD.[10]

35. On information and belief, the '561 Accused Instrumentalities include "a dynamic nonlinear predistorter module." For example, the '561 Accused Instrumentalities comprise a dynamic nonlinear predistortion block (shown in blue) configured to effect predistortion of concurrent input signals shown below resulting in concurrent output signals:

---

[9] Samsung's publicly available materials indicate that Samsung employs digital pre-distortion technology in its RAN Infrastructure. *See* Samsung Research America, *AI/ML Optimized Modulations and Digital Predistortion for RF Impairments*, available at: https://sra.samsung.com/publications/ai-ml-optimized-modulations -and-digital-predistortion-for-rf-impairments; U.S. Patent No. 12,531,579 ("Electronic device and method for digital predistortion in wireless communication system");U.S. Patent No. 12,542,570 ("Power amplifier-aware modulation"); U.S. Patent Pub. No. 2025/0105865 ("Transmitter adaptively selecting digital predistortion mode, digital predistorter and training method thereof"); International Patent Application Publication No. WO 2025/101025 A1 ("Method and apparatus for determining subset of parameters from total parameters of digital predistortion in wireless communication system"); U.S. Patent Pub. No. 2024/0364275 ("Rf circuit supporting predistortion and method of operating the same"); European Patent Application Publication No. EP 4690463A1 ("Method and electronic device for pre-compensating distortion effects of power amplifier").

[10] Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, at 3 (explaining that the '561 Accused Instrumentalities comprise a "pre-distortion linearizer engine to correct for nonlinear distortions in the transmit path").




Figure 1a: Signal correction IP cores for transmitter

*Figure 1.*[11]

36. On information and belief, the ’561 Accused Instrumentalities include “a second module characterizing static nonlinear characteristics of the nonlinear system, wherein the second module comprises an input and an output.” For example, the ’561 Accused Instrumentalities include a multiband actuator (shown in red) configured to characterize static nonlinear characteristics:




Figure 1a: Signal correction IP cores for transmitter

*Figure 2.*[12]

[11] Exhibit 1, NanoSemi’s Value Proposition and Competitive Advantages, at 3; *see also id.* at 5 (explaining that the ’561 Accused Instrumentalities model “nonlinear dynamic system, NanoSemi’s linearizer has an accurate representation of a very nonlinear but highly power efficient PA and the entire transmit and receive chain.”).

[12] Exhibit 1, NanoSemi’s Value Proposition and Competitive Advantages, at 3.

37. On information and belief, the ’561 Accused Instrumentalities are configured such that “wherein the first module is coupled to the second module.” For example, the ’561 Accused Instrumentalities connect the actuator (shown in blue) to the multiband actuator (shown in red) via coupling (shown in green):




Figure 1a: Signal correction IP cores for transmitter

*Figure 3.* [13]

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

38. In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’561 Patent by knowingly and intentionally inducing others, including its customers, to directly infringe the ’561 Patent.

39. At a minimum, Defendant has knowledge of the ’561 Patent since at least service of this Complaint in this action. Since that time, Defendant has actively induced, and continues to actively induce, the direct infringement of its customers, such as Cellco Partnership d/b/a Verizon Wireless (“Verizon”), by encouraging and facilitating the implementation, operation, use, sale, and offer for sale of the Accused Products in Verizon’s cellular network, as set forth under 35 U.S.C.

[13] Exhibit 1, NanoSemi’s Value Proposition and Competitive Advantages, at 3.

§ 271(b). Such inducement has been committed with knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '561 Patent.

40. Indeed, Defendant has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, designing, marketing, selling, supplying, configuring, integrating, testing, supporting, and providing technical assistance for the Accused Products, and by creating and disseminating product documentation, technical specifications, deployment guides, user manuals, and other instructional materials that teach and encourage its customers, such as Verizon, to deploy, integrate, configure, operate, maintain, and use the Accused Products in Verizon's cellular network in the manner alleged herein to infringe the '561 Patent. For example, Defendant's product webpages and marketing materials describe its 5G RAN portfolio and promote the deployment and operation of the Accused Products by mobile network operators in commercial 5G cellular networks.[14] Defendant further publishes materials describing and promoting the deployment, integration, interoperability, operation, and continued evolution of the Accused Products in Verizon's cellular network, including Defendant's testing, implementation assistance, technical support, and software solutions provided in connection with such deployments.[15] These materials describe the capabilities, functionality, deployment scenarios, interoperability, and performance

[14] *See, e.g.*, https://www.samsung.com/global/business/networks/products/radio-access/5g-ran/; https://www.samsung.com/global/business/networks/products/radio-access/massive-mimo-radio/.

[15] *See, e.g.*, https://www.samsung.com/global/business/networks/insights/press-release/verizon-selects-samsung-for-5g-commercial-launch; https://www.samsung.com/global/business/networks/insights/press-release/0213-samsung-verizon-and-keysight-advance-commercial-open-ran-with-extensive-conformance-and-interopera-ility-testing/; https://www.samsung.com/global/business/networks/insights/press-release/0122-samsung-expands-5g-technology-leadership-with-fully-virtualized-commercial-5g-ran/.

benefits of the Accused Products, promote their implementation and operation in commercial 5G cellular networks, and encourage mobile network operators, such as Verizon, to deploy and operate the Accused Products as part of its commercial cellular network.

41. Defendant's affirmative steps to induce infringement further include collaborating with its customers, such as Verizon, during network planning, deployment, integration, interoperability testing, optimization, software implementation and updates, maintenance, troubleshooting, and ongoing operation of the Accused Products, including by providing engineering services, technical support, implementation assistance, software releases and updates, and other customer support that facilitate, enable, and encourage Verizon's implementation, operation, use, sale, and offer for sale of the Accused Products in its cellular network in an infringing manner.

42. By providing the Accused Products, together with the foregoing, Defendant knows (and has known), or has been willfully blind to the fact, that its actions have actively induced, and continue to actively induce, infringement of the '561 Patent by Verizon, including by encouraging and facilitating Verizon's deployment, configuration, integration, operation, and maintenance of the Accused Products in the manner alleged herein to infringe the '561 Patent.

***Damages***

43. Smart RF has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates Smart RF for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44. Despite having knowledge of the '561 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '561 Patent, Defendant has nevertheless continued

its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '561 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Smart RF's rights with respect to the '561 Patent, justifying enhanced damages under 35 U.S.C. § 284.

**<u>COUNT II</u>**

(INFRINGEMENT OF U.S. PATENT NO. 9,621,236)

45. Plaintiff incorporates the preceding paragraphs herein by reference.

46. Smart RF is the assignee of the '236 Patent, with ownership of all substantial rights, title, and interest in and to the '236 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

47. The '236 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on April 11, 2017, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

48. Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the '236 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure. Such infringement includes, but is not limited to, the making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure that leverage and infringe the inventions of the '236 Patent (collectively, the "'236 Accused Instrumentalities"). For example, the '236 Accused Instrumentalities utilize hardware and/or software implementing digital predistortion functionality, such as MaxLin DPD technology, that employs digital pre-distortion techniques covered by the '236 Patent. To the extent that the '236 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC, FPGA, or other hardware or

software implementation that performs the same or substantially similar digital pre-distortion operations as those described below.[16]

49. On information and belief, by way of illustration only, Defendant, through its making, using, testing, selling, offering for sale, and/or importing into the United States the '236 Accused Instrumentalities, has satisfied and continues to satisfy each and every limitation of claim 1 of the '236 Patent. The '236 Accused Instrumentalities perform a "method for multiple-input multiple-output impairment pre-compensation in a multiple-input and multiple-output transmitter having a multiple-input multiple-output radio frequency (RF) power amplifier." For example, the '236 Accused Instrumentalities, such as RAN Infrastructure, including base stations, such as eNodeBs and gNodeBs, radio units, and related network equipment provided by Defendant, perform a method for MIMO impairment pre-compensation. Specifically, the '236 Accused Instrumentalities include hardware, such as a chip equipped to use a NanoSemi Linearizer, that performs impairment signal predistortion.[17] Such hardware performs impairment pre-compensation and "integrates into the digital baseband of a System on Chip (SoC) modem to digitally correct for nonlinearities, linear imperfections, interference and load variations…The

[16] Samsung's publicly available materials indicate that Samsung employs digital pre-distortion technology in its RAN Infrastructure. *See* Samsung Research America, *AI/ML Optimized Modulations and Digital Predistortion for RF Impairments*, available at: https://sra.samsung.com/publications/ai-ml-optimized-modulations -and-digital-predistortion-for-rf-impairments; U.S. Patent No. 12,531,579 ("Electronic device and method for digital predistortion in wireless communication system");U.S. Patent No. 12,542,570 ("Power amplifier-aware modulation"); U.S. Patent Pub. No. 2025/0105865 ("Transmitter adaptively selecting digital predistortion mode, digital predistorter and training method thereof"); International Patent Application Publication No. WO 2025/101025 A1 ("Method and apparatus for determining subset of parameters from total parameters of digital predistortion in wireless communication system"); U.S. Patent Pub. No. 2024/0364275 ("Rf circuit supporting predistortion and method of operating the same"); European Patent Application Publication No. EP 4690463A1 ("Method and electronic device for pre-compensating distortion effects of power amplifier").

[17] *See, e.g.,* Exhibit 1, "NanoSemi's Value Proposition and Competitive Advantages," at 2-3.

NanoSemi Linearizer Core is NanoSemi's digital pre-distortion linearizer engine to correct for nonlinear distortions in the transmit path."[18] As shown in the figure below, the multiple inputs are identified in the purple box and the multiple-outputs of the RF power amplifier are identified in the light blue box:




Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 4.* [19]

50. On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "receiving at the multiple-input and multiple-output transmitter a plurality of input signals forming a multiple-input signal." For example, the '236 Accused Instrumentalities include hardware that receives a plurality of input signals (identified in the purple box from the figure above) forming a multiple-input signal in a MIMO system.[20] Likewise, the figure above shows that the system is a "2x2 MIMO" system.

51. On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "generating a pre-distorted multiple-input signal from the received

[18] Exhibit 1, "NanoSemi's Value Proposition and Competitive Advantages," at 2-3.
[19] Exhibit 1, "NanoSemi's Value Proposition and Competitive Advantages," at 3.
[20] Exhibit 1, "NanoSemi's Value Proposition and Competitive Advantages," at 3.

multiple-input signal." For example, the '236 Accused Instrumentalities generate a pre-distorted multiple-input signal from the received multiple-input signal by using a block of actuators to distort the multiple-input signal (shown in the red box below).



Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 5.* [21]

52. On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "generating a multiple-output signal by feeding the pre-distorted multiple-input signal into a multiple-input and multiple-output transmitter." For example, the pre-distorted multiple-input signal (shown in green below) is amplified by the PA block (shown in blue below), generating a multiple-output signal (shown in brown below).

[21] Exhibit 1, "NanoSemi's Value Proposition and Competitive Advantages," at 3.




*Figure 6.*[22]




*Figure 7.*[23]

53. On information and belief, Defendant, via its operation of the ’236 Accused Instrumentalities, performs “estimating impairments generated by nonlinear crosstalk in the multiple-input and multiple-output RF power amplifier, the nonlinear crosstalk being generated between respective channels of the multiple-input and multiple-output RF power amplifier while being driven by the plurality of input signals.” For example, the ’236 Accused Instrumentalities estimate the signal impairments based on the feedback signals from the power amplifier block and from the multiple pre-distorted signals. Such estimation may comprise a characterization process

[22] Exhibit 1, “NanoSemi’s Value Proposition and Competitive Advantages,” at 3.
[23] Exhibit 1, “NanoSemi’s Value Proposition and Competitive Advantages,” at 2.

that models nonlinear crosstalk of the multiple bands being amplified.[24] The impairments comprise nonlinear crosstalk between bands while the power amplifier is being driven. For example, the ’236 Accused Instrumentalities suppress the noise and interference between desired bands:




**Figure 7: Suppression of inter-band noise and interference in a dual band (bands 1 and 3) signal placed through a single Power Amplifier.**

*Figure 8.* [25]

54. On information and belief, Defendant, via its operation of the ’236 Accused Instrumentalities, performs “adjusting the pre-distorted multiple-input signal to compensate for the estimated impairments.” For example, the actuators within the ’236 Accused Instrumentalities comprise a matrix of pre-processing cells that adjusts the pre-distorted multiple-input to correct for the nonlinear distortion and crosstalk between the different paths.[26]

---

[24] Exhibit 1, “NanoSemi’s Value Proposition and Competitive Advantages,” at 5.
[25] Exhibit 2, “Elevating 4G and 5G Infrastructure Connectivity,” at 7.
[26] Exhibit 1 at 3 (“The estimator is implemented in a small number of logic gates and does not require a dedicated processor.”); *see also id.* at 3-4 (explaining the utilization of “real-time estimation…The estimator re-computes coefficients for the actuator in the background and updates them.”).

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

55. In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’236 Patent by knowingly and intentionally inducing others, including its customers, to directly infringe the ’236 Patent.

56. At a minimum, Defendant has knowledge of the ’236 Patent since at least service of this Complaint in this action. Since that time, Defendant has actively induced, and continues to actively induce, the direct infringement of its customers, such as Cellco Partnership d/b/a Verizon Wireless (“Verizon”), by encouraging and facilitating the implementation, operation, use, sale, and offer for sale of the Accused Products in Verizon’s cellular network, as set forth under 35 U.S.C. § 271(b). Such inducement has been committed with knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the ’236 Patent.

57. Indeed, Defendant has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, designing, marketing, selling, supplying, configuring, integrating, testing, supporting, and providing technical assistance for the Accused Products, and by creating and disseminating product documentation, technical specifications, deployment guides, user manuals, and other instructional materials that teach and encourage its customers, such as Verizon, to deploy, integrate, configure, operate, maintain, and use the Accused Products in Verizon’s cellular network in the manner alleged herein to infringe the ’236 Patent. For example, Defendant’s product webpages and marketing materials describe its 5G RAN portfolio and promote the deployment and operation of the Accused Products by mobile network operators in commercial 5G cellular

networks.[27] Defendant further publishes materials describing and promoting the deployment, integration, interoperability, operation, and continued evolution of the Accused Products in Verizon's cellular network, including Defendant's testing, implementation assistance, technical support, and software solutions provided in connection with such deployments.[28] These materials describe the capabilities, functionality, deployment scenarios, interoperability, and performance benefits of the Accused Products, promote their implementation and operation in commercial 5G cellular networks, and encourage mobile network operators, such as Verizon, to deploy and operate the Accused Products as part of its commercial cellular network.

58. Defendant's affirmative steps to induce infringement further include collaborating with its customers, such as Verizon, during network planning, deployment, integration, interoperability testing, optimization, software implementation and updates, maintenance, troubleshooting, and ongoing operation of the Accused Products, including by providing engineering services, technical support, implementation assistance, software releases and updates, and other customer support that facilitate, enable, and encourage Verizon's implementation, operation, use, sale, and offer for sale of the Accused Products in its cellular network in an infringing manner.

---

[27] *See, e.g.*, https://www.samsung.com/global/business/networks/products/radio-access/5g-ran/; https://www.samsung.com/global/business/networks/products/radio-access/massive-mimo-radio/.

[28] *See, e.g.*, https://www.samsung.com/global/business/networks/insights/press-release/verizon-selects-samsung-for-5g-commercial-launch; https://www.samsung.com/global/business/networks/insights/press-release/0213-samsung-verizon-and-keysight-advance-commercial-open-ran-with-extensive-conformance-and-interopera-ility-testing/; https://www.samsung.com/global/business/networks/insights/press-release/0122-samsung-expands-5g-technology-leadership-with-fully-virtualized-commercial-5g-ran/.

59. By providing the Accused Products, together with the foregoing, Defendant knows (and has known), or has been willfully blind to the fact, that its actions have actively induced, and continue to actively induce, infringement of the ’236 Patent by Verizon, including by encouraging and facilitating Verizon’s deployment, configuration, integration, operation, and maintenance of the Accused Products in the manner alleged herein to infringe the ’236 Patent.

***Damages***

60. Smart RF has been damaged as a result of Defendant’s infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates Smart RF for Defendant’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

61. Despite having knowledge of the ’236 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the ’236 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant’s infringing activities relative to the ’236 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Smart RF’s rights with respect to the ’236 Patent, justifying enhanced damages under 35 U.S.C. § 284.

**COUNT III**
(INFRINGEMENT OF U.S. PATENT NO. 9,641,204)

62. Plaintiff incorporates the preceding paragraphs herein by reference.

63. Smart RF is the assignee of the ’204 Patent, with ownership of all substantial rights, title, and interest in and to the ’204 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

64. The ’204 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on May 2, 2017, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

65. Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the ’204 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure. Such infringement includes, but is not limited to, the making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure that leverage and infringe the inventions of the ’204 Patent (collectively, the “’204 Accused Instrumentalities”). For example, the ’204 Accused Instrumentalities utilize hardware and/or software implementing digital predistortion functionality, such as MaxLin DPD technology, that employs digital pre-distortion techniques covered by the ’204 Patent. To the extent that the ’204 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC, FPGA, or other hardware or software implementation that performs the same or substantially similar digital pre-distortion operations as those described below.[29]

66. On information and belief, by way of illustration only, Defendant, through its making, using, testing, selling, offering for sale, and/or importing into the United States the ’204 Accused Instrumentalities, has satisfied and continues to satisfy each and every limitation of claim

[29] Samsung’s publicly available materials indicate that Samsung employs digital pre-distortion technology in its RAN Infrastructure. *See* Samsung Research America, *AI/ML Optimized Modulations and Digital Predistortion for RF Impairments*, available at: https://sra.samsung.com/publications/ai-ml-optimized-modulations -and-digital-predistortion-for-rf-impairments; U.S. Patent No. 12,531,579 (“Electronic device and method for digital predistortion in wireless communication system”);U.S. Patent No. 12,542,570 (“Power amplifier-aware modulation”); U.S. Patent Pub. No. 2025/0105865 (“Transmitter adaptively selecting digital predistortion mode, digital predistorter and training method thereof”); International Patent Application Publication No. WO 2025/101025 A1 (“Method and apparatus for determining subset of parameters from total parameters of digital predistortion in wireless communication system”); U.S. Patent Pub. No. 2024/0364275 (“Rf circuit supporting predistortion and method of operating the same”); European Patent Application Publication No. EP 4690463A1 (“Method and electronic device for pre-compensating distortion effects of power amplifier”).

1 of the ’204 Patent. The ’204 Accused Instrumentalities include a “transmitter.” For example, the ’204 Accused Instrumentalities comprise RAN Infrastructure, including base stations, such as eNodeBs and gNodeBs, radio units, and related network equipment, each of which includes one or more transmitters for transmitting cellular signals.

67. On information and belief, the ’204 Accused Instrumentalities include “a power amplifier configured to amplify modulated concurrent multi-band signals to provide amplified concurrent multi-band signals.” For example, the ’204 Accused Instrumentalities include linearizing hardware associated with the transmitters of the Accused Instrumentalities. Such linearizing hardware comprises a power amplifier configured to amplify modulated concurrent multi-band signals to provide amplified concurrent multi-band signals.




Figure 1a: Signal correction IP cores for transmitter

*Figure 9.*[30]

68. On information and belief, the ’204 Accused Instrumentalities include “a concurrent digital multi-band predistortion block configured to effect predistortion of the modulated concurrent multi-band signals to compensate for a non-linearity of the power amplifier.” For example, the transmitters of the ’204 Accused Instrumentalities comprise hardware

[30] Exhibit 1, NanoSemi’s Value Proposition and Competitive Advantages, at 2.

and/or software implementing a concurrent digital multi-band predistortion block configured to effect predistortion of the modulated concurrent multi-band signals to compensate for a non-linearity of the power amplifier.[31]




Figure 1a: Signal correction IP cores for transmitter

*Figure 10.*[32]

69. On information and belief, the '204 Accused Instrumentalities include "a signal observation feedback loop configured to effect concurrent sampling of the amplified concurrent multi-band signals at a subsampling frequency lower than twice a highest signal frequency in the

[31] Publicly available materials demonstrate that Samsung's RAN infrastructure includes, at a minimum, multi-band radios and/or multi-band transmitters. Samsung, *5G made simple*, available at: https://www.samsung.com/global/business/networks/products/radio-access/radio/ ("Samsung's Radio portfolio includes multi-band radios to decrease footprint and modernize sites that are filled with legacy equipment."); Samsung, *The Power of Multi-Band Radios: Unlocking Faster Speeds, Better Coverage and a Smaller Footprint*, available at: https://www.samsung.com/global/business/networks/insights/blog/0822-the-power-of-multi-band-radios-unlocking-faster-speeds-better-coverage-and-a-smaller-footprint/ ("Samsung is one of the leading network solutions vendors in the world and has been providing multi-band radios for years, with both dual-band and tri-band solutions. Samsung supports the multi-band radio requirements for major mobile network operators across the globe, including North America . . . ."); Samsung Networks, Samsung Radios: 5G made simple, available at: https://www.youtube.com/watch?v=rEHTF8YPk6k (identifying dual-band and tri-band radios).

[32] Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, at 2; *id.*, at 4 (explaining that the '204 Accused Instrumentalities comprise a "digital pre-distortion linearizer engine to correct for nonlinear distortions in the transmit path").

amplified concurrent multi-band signals." For example, the '204 Accused Instrumentalities comprise the feedback loop shown below:




Figure 1a: Signal correction IP cores for transmitter

*Figure 11.*[33]

70. The feedback loop is configured to effect concurrent sampling of the amplified concurrent multi-band signals at a subsampling frequency lower than twice a highest signal frequency in the amplified concurrent multi-band signals.[34]

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

71. In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '204 Patent by knowingly and intentionally inducing others, including its customers, to directly infringe the '204 Patent.

72. At a minimum, Defendant has knowledge of the '204 Patent since at least service of this Complaint in this action. Since that time, Defendant has actively induced, and continues to actively induce, the direct infringement of its customers, such as Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by encouraging and facilitating the implementation, operation, use, sale, and

---

[33] *Id*., at 2.
[34] *Id*. at 4 (explaining that the feedback sampling can occur "at [the] same or lower sampling rate than DAC").

offer for sale of the Accused Products in Verizon's cellular network, as set forth under 35 U.S.C. § 271(b). Such inducement has been committed with knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '204 Patent.

73. Indeed, Defendant has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, designing, marketing, selling, supplying, configuring, integrating, testing, supporting, and providing technical assistance for the Accused Products, and by creating and disseminating product documentation, technical specifications, deployment guides, user manuals, and other instructional materials that teach and encourage its customers, such as Verizon, to deploy, integrate, configure, operate, maintain, and use the Accused Products in Verizon's cellular network in the manner alleged herein to infringe the '204 Patent. For example, Defendant's product webpages and marketing materials describe its 5G RAN portfolio and promote the deployment and operation of the Accused Products by mobile network operators in commercial 5G cellular networks.[35] Defendant further publishes materials describing and promoting the deployment, integration, interoperability, operation, and continued evolution of the Accused Products in Verizon's cellular network, including Defendant's testing, implementation assistance, technical support, and software solutions provided in connection with such deployments.[36] These materials

---

[35] *See, e.g.*, https://www.samsung.com/global/business/networks/products/radio-access/5g-ran/; https://www.samsung.com/global/business/networks/products/radio-access/massive-mimo-radio/.

[36] *See, e.g.*, https://www.samsung.com/global/business/networks/insights/press-release/verizon-selects-samsung-for-5g-commercial-launch; https://www.samsung.com/global/business/networks/insights/press-release/0213-samsung-verizon-and-keysight-advance-commercial-open-ran-with-extensive-conformance-and-interopera-ility-testing/; https://www.samsung.com/global/business/networks/insights/press-release/0122-samsung-expands-5g-technology-leadership-with-fully-virtualized-commercial-5g-ran/.

describe the capabilities, functionality, deployment scenarios, interoperability, and performance benefits of the Accused Products, promote their implementation and operation in commercial 5G cellular networks, and encourage mobile network operators, such as Verizon, to deploy and operate the Accused Products as part of its commercial cellular network.

74. Defendant's affirmative steps to induce infringement further include collaborating with its customers, such as Verizon, during network planning, deployment, integration, interoperability testing, optimization, software implementation and updates, maintenance, troubleshooting, and ongoing operation of the Accused Products, including by providing engineering services, technical support, implementation assistance, software releases and updates, and other customer support that facilitate, enable, and encourage Verizon’s implementation, operation, use, sale, and offer for sale of the Accused Products in its cellular network in an infringing manner.

75. By providing the Accused Products, together with the foregoing, Defendant knows (and has known), or has been willfully blind to the fact, that its actions have actively induced, and continue to actively induce, infringement of the ’204 Patent by Verizon, including by encouraging and facilitating Verizon’s deployment, configuration, integration, operation, and maintenance of the Accused Products in the manner alleged herein to infringe the ’204 Patent.

***Damages***

76. Smart RF has been damaged as a result of Defendant’s infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates Smart RF for Defendant’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

77. Despite having knowledge of the ’204 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the ’204 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant’s infringing activities relative to the ’204 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Smart RF’s rights with respect to the ’204 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT IV

(INFRINGEMENT OF U.S. PATENT NO. 10,958,296)

78. Plaintiff incorporates the preceding paragraphs herein by reference.

79. Smart RF is the assignee of the ’296 Patent, with ownership of all substantial rights, title, and interest in and to the ’296 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

80. The ’296 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on March 23, 2021, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

81. Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the ’296 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure. Such infringement includes, but is not limited to, the making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure that leverage and infringe the inventions of the ’296 Patent (collectively, the “’296 Accused Instrumentalities”). For example, the ’296 Accused Instrumentalities utilize hardware and/or software implementing digital predistortion functionality, such as MaxLin DPD technology, that employs digital pre-distortion techniques covered by the ’296 Patent. To the extent that the ’296 Accused Instrumentalities do

not include MaxLin DPD technology, they include a custom ASIC, FPGA, or other hardware or software implementation that performs the same or substantially similar digital pre-distortion operations as those described below.[37]

82. On information and belief, by way of illustration only, Defendant through its making, using, testing, selling, offering for sale, and/or importing into the United States the ’296 Accused Instrumentalities, has satisfied and continues to satisfy each and every limitation of claim 1 of the ’296 Patent. The ’296 Accused Instrumentalities include a “linearized transmitter.” For example, the ’296 Accused Instrumentalities comprise RAN Infrastructure, including base stations, such as eNodeBs and gNodeBs, radio units, and related network equipment, each of which includes a linear transmitter that corrects for nonlinearities in the transmit path.[38]

83. On information and belief, the ’296 Accused Instrumentalities include “a digital signal predistorter block including digital baseband signal predistorters effecting predistortion of concurrent input signals to output concurrent predistorted signals.” For example, the ’296 Accused

---

[37] Samsung’s publicly available materials indicate that Samsung employs digital pre-distortion technology in its RAN Infrastructure. *See* Samsung Research America, *AI/ML Optimized Modulations and Digital Predistortion for RF Impairments*, available at: https://sra.samsung.com/publications/ai-ml-optimized-modulations -and-digital-predistortion-for-rf-impairments; U.S. Patent No. 12,531,579 (“Electronic device and method for digital predistortion in wireless communication system”);U.S. Patent No. 12,542,570 (“Power amplifier-aware modulation”); U.S. Patent Pub. No. 2025/0105865 (“Transmitter adaptively selecting digital predistortion mode, digital predistorter and training method thereof”); International Patent Application Publication No. WO 2025/101025 A1 (“Method and apparatus for determining subset of parameters from total parameters of digital predistortion in wireless communication system”); U.S. Patent Pub. No. 2024/0364275 (“Rf circuit supporting predistortion and method of operating the same”); European Patent Application Publication No. EP 4690463A1 (“Method and electronic device for pre-compensating distortion effects of power amplifier”).

[38] Exhibit 1, NanoSemi’s Value Proposition and Competitive Advantages, at 2 (explaining that the ’296 Accused Instrumentalities comprise a linearizer that “integrates into the digital baseband of a System on Chip (SoC) modem to digitally correct for nonlinearities, linear imperfections, interference and load variations produced either on the transmit or receive parts of the RF signal chain such as the Power Amplifier (PA), transceivers, data converters and filters”).

Instrumentalities use a predistortion block to effect predistortion of concurrent input signals shown below resulting in concurrent output signals:




*Figure 12.*[39]

84. The '296 Accused Instrumentalities include a digital predistortion linearizer engine configured to correct for nonlinear distortions in the transmit path that comprises an actuator to apply a predistorted digital signal, and an estimator to compute and update coefficients used by the actuator.[40]

85. On information and belief, the '296 Accused Instrumentalities include "a power amplifier block connected to amplify the predistorted signals." For example, the '296 Accused Instrumentalities comprise a power amplifier block to amplify the predistorted signals:

[39] *Id*. at 3.
[40] *Id*.




Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 13.*[41]

86. On information and belief, the '296 Accused Instrumentalities include "an analyzing and modelling stage receiving first feedback signals taken from an output of the power amplifier, and second feedback signals taken concurrently from the concurrent predistorted signals." For example, the '296 Accused Instrumentalities comprise an analyzing and modeling stage (shown in red, which comprises the calibration unit) that is configured to receive first feedback signals (shown in green) taken from an output of the power amplifier, and second feedback signals (shown in blue) taken concurrently from the concurrent predistorted signals:

[41] *Id.*




Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 14.*[42]

87. Within the analyzing and modeling stage, the estimator is configured to process the feedback signals concurrently by functioning in real time.[43]

88. On information and belief, the '296 Accused Instrumentalities are configured to "us[e] the first feedback and the second feedback signals in the analyzing and modelling stage to model a nonlinearity in the power amplifier." For example, the '296 Accused Instrumentalities comprise an analyzing and modeling stage configured to use the first and second feedback signals to model a nonlinearity of the power amplifier and adjust the coefficients applied to the actuator accordingly.[44]

89. On information and belief, the '296 Accused Instrumentalities are configured such that "wherein the digital baseband signal predistorters are updated by the analyzing and modelling

---

[42] *Id.*
[43] *Id.* (explaining that the '296 Accused Instrumentalities include a "real time Estimator block").
[44] *Id.* at 5 (explaining that the '296 Accused Instrumentalities "characterization process accurately models nonlinear dynamic system, NanoSemi's linearizer has an accurate representation of a very nonlinear but highly power-efficient PA and the entire transmit and receive chain" and that such instrumentalities provide a "solution with a real-time adaptation for a power-sensitive mobile device.").

stage." For example, the '296 Accused Instrumentalities include digital baseband signal predistorters configured such that the digital baseband signal predistorters are updated based on the modeling of the non-linear distortion.[45]

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

90. In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '296 Patent by knowingly and intentionally inducing others, including its customers, to directly infringe the '296 Patent.

91. At a minimum, Defendant has knowledge of the '296 Patent since at least service of this Complaint in this action. Since that time, Defendant has actively induced, and continues to actively induce, the direct infringement of its customers, such as Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by encouraging and facilitating the implementation, operation, use, sale, and offer for sale of the Accused Products in Verizon's cellular network, as set forth under 35 U.S.C. § 271(b). Such inducement has been committed with knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '296 Patent.

92. Indeed, Defendant has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, designing, marketing, selling, supplying, configuring, integrating, testing, supporting, and providing technical assistance for the Accused Products, and by creating and disseminating product documentation, technical specifications, deployment guides, user manuals, and other

[45] *Id*. at 4 (explaining that the '296 Accused Instrumentalities "take[] samples from the output of PA and stores 2000-4000 samples in a buffer. The estimator re-computes coefficients for the actuator in the background and updates them. The off-the-air duration is in μs. The estimation time (or convergence time) is ~ms – tens of ms. The estimator is implemented in a small number of logic gates and does not require a dedicated processor.").

instructional materials that teach and encourage its customers, such as Verizon, to deploy, integrate, configure, operate, maintain, and use the Accused Products in Verizon's cellular network in the manner alleged herein to infringe the '296 Patent. For example, Defendant's product webpages and marketing materials describe its 5G RAN portfolio and promote the deployment and operation of the Accused Products by mobile network operators in commercial 5G cellular networks.[46] Defendant further publishes materials describing and promoting the deployment, integration, interoperability, operation, and continued evolution of the Accused Products in Verizon's cellular network, including Defendant's testing, implementation assistance, technical support, and software solutions provided in connection with such deployments.[47] These materials describe the capabilities, functionality, deployment scenarios, interoperability, and performance benefits of the Accused Products, promote their implementation and operation in commercial 5G cellular networks, and encourage mobile network operators, such as Verizon, to deploy and operate the Accused Products as part of its commercial cellular network.

93. Defendant's affirmative steps to induce infringement further include collaborating with its customers, such as Verizon, during network planning, deployment, integration, interoperability testing, optimization, software implementation and updates, maintenance, troubleshooting, and ongoing operation of the Accused Products, including by providing

[46] *See, e.g.*, https://www.samsung.com/global/business/networks/products/radio-access/5g-ran/; https://www.samsung.com/global/business/networks/products/radio-access/massive-mimo-radio/.

[47] *See, e.g.*, https://www.samsung.com/global/business/networks/insights/press-release/verizon-selects-samsung-for-5g-commercial-launch; https://www.samsung.com/global/business/networks/insights/press-release/0213-samsung-verizon-and-keysight-advance-commercial-open-ran-with-extensive-conformance-and-interopera-ility-testing/; https://www.samsung.com/global/business/networks/insights/press-release/0122-samsung-expands-5g-technology-leadership-with-fully-virtualized-commercial-5g-ran/.

engineering services, technical support, implementation assistance, software releases and updates, and other customer support that facilitate, enable, and encourage Verizon's implementation, operation, use, sale, and offer for sale of the Accused Products in its cellular network in an infringing manner.

94. By providing the Accused Products, together with the foregoing, Defendant knows (and has known), or has been willfully blind to the fact, that its actions have actively induced, and continue to actively induce, infringement of the '296 Patent by Verizon, including by encouraging and facilitating Verizon's deployment, configuration, integration, operation, and maintenance of the Accused Products in the manner alleged herein to infringe the '296 Patent.

***Damages***

95. Smart RF has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates Smart RF for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

96. Despite having knowledge of the '296 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '296 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '296 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Smart RF's rights with respect to the '296 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT V

(INFRINGEMENT OF U.S. PATENT NO. 12,647,142)

97. Plaintiff incorporates the preceding paragraphs herein by reference.

98. Smart RF is the assignee of the ’142 Patent, with ownership of all substantial rights, title, and interest in and to the ’142 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

99. The ’142 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on June 2, 2026, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

100. Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the ’142 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure. Such infringement includes, but is not limited to, the making, using, selling, offering for sale, and/or importing into the United States RAN Infrastructure that leverage and infringe the inventions of the ’142 Patent (collectively, the “’142 Accused Instrumentalities”). For example, the ’142 Accused Instrumentalities utilize hardware and/or software implementing digital predistortion functionality, such as MaxLin DPD technology, that employs digital pre-distortion techniques covered by the ’142 Patent. To the extent that the ’142 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC, FPGA, or other hardware or software implementation that performs the same or substantially similar digital pre-distortion operations as those described below.[48]

[48] Samsung’s publicly available materials indicate that Samsung employs digital pre-distortion technology in its RAN Infrastructure. *See* Samsung Research America, *AI/ML Optimized Modulations and Digital Predistortion for RF Impairments*, available at: https://sra.samsung.com/publications/ai-ml-optimized-modulations -and-digital-predistortion-for-rf-impairments; U.S. Patent No. 12,531,579 (“Electronic device and method for digital predistortion in wireless communication system”);U.S. Patent No. 12,542,570 (“Power amplifier-aware modulation”); U.S. Patent Pub. No. 2025/0105865 (“Transmitter adaptively selecting digital predistortion mode, digital predistorter and training method thereof”); International Patent Application Publication No. WO 2025/101025 A1 (“Method and apparatus for determining subset

101. On information and belief, by way of illustration only, Defendant, through its making, using, testing, selling, offering for sale, and/or importing into the United States the '142 Accused Instrumentalities, has satisfied and continues to satisfy each and every limitation of claim 1 of the '142 Patent. The '142 Accused Instrumentalities include a "linearized transmitter." For example, the '142 Accused Instrumentalities comprise RAN Infrastructure, including base stations, such as eNodeBs and gNodeBs, radio units, and related network equipment, each of which includes a linear transmitter that corrects for nonlinearities in the transmit path.[49]

102. On information and belief, the '142 Accused Instrumentalities include "a digital predistorter block in a transmit signal path effecting signal distortion to output a plurality of distinct concurrent predistorted signals, each of the distinct concurrent predistorted signals being a function of a single input signal." For example, the digital predistorter block comprises the actuator that distorts the input signals:

of parameters from total parameters of digital predistortion in wireless communication system"); U.S. Patent Pub. No. 2024/0364275 ("Rf circuit supporting predistortion and method of operating the same"); European Patent Application Publication No. EP 4690463A1 ("Method and electronic device for pre-compensating distortion effects of power amplifier").

[49] Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, at 2 (explaining that the '142 Accused Instrumentalities comprise a linearizer that "integrates into the digital baseband of a System on Chip (SoC) modem to digitally correct for nonlinearities, linear imperfections, interference and load variations produced either on the transmit or receive parts of the RF signal chain such as the Power Amplifier (PA), transceivers, data converters and filters").




*Figure 15.*[50]

103. Because the signals are used to transmit a carrier aggregated 4G or 5G signal, it is believed that each input and output corresponds to a single frequency channel and that they are concurrent.[51]

104. On information and belief, the '142 Accused Instrumentalities include "a transmitter block connected in the transmit signal path for combining said plurality of distinct concurrent predistorted signals for transmission by a power amplifier block." For example, the '142 Accused Instrumentalities include a transmitter block shown in green and a power amplifier block shown in red:

[50] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, at 2.
[51] *See* https://www.rfpage.com/carrier-aggregation-5g/.




Figure 1a: Signal correction IP cores for transmitter

*Figure 16.* [52]

105. On information and belief, the '142 Accused Instrumentalities include "a signal observation feedback loop configured to effect concurrent sampling of the amplified concurrent multi-band signals at a subsampling frequency lower than twice a highest signal frequency in the amplified concurrent multi-band signals." For example, the '142 Accused Instrumentalities include the feedback loop shown below (shown in green below):




Figure 1a: Signal correction IP cores for transmitter

*Figure 17.* [53]

---

[52] *Id.* (explaining that the '142 Accused Instrumentalities comprise a "digital pre-distortion linearizer engine to correct for nonlinear distortions in the transmit path").
[53] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, at 2.

The feedback path is configured to perform a down-converting subsampling operation to generate a plurality of concurrent and distinct feedback signals.[54]

106. On information and belief, the ’142 Accused Instrumentalities include “an analyzing and modelling block configured to use the concurrent and distinct feedback signals for synthesizing predistorter coefficients for the digital predistorter block.” For example, the ’142 Accused Instrumentalities include an analyzing and modeling block (shown in red, which comprises the calibration unit) configured to use first feedback signals (shown in green) taken from an output of the power amplifier, and second feedback signals (shown in blue) taken concurrently from the concurrent predistorted signals:




*Figure 18.*[55]

107. Within the analyzing and modeling stage, the estimator synthesizes predistorter coefficients for the digital predistorter block.[56]

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

---

[54] *Id.* at 4 (explaining that the feedback sampling can occur “at [the] same or lower sampling rate than DAC”).
[55] *Id.*
[56] *Id.* (explaining that the ’142 Accused Instrumentalities include a “real time Estimator block”).

108. In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’142 Patent by knowingly and intentionally inducing others, including its customers, to directly infringe the ’142 Patent.

109. At a minimum, Defendant has knowledge of the ’142 Patent since at least service of this Complaint in this action. Since that time, Defendant has actively induced, and continues to actively induce, the direct infringement of its customers, such as Cellco Partnership d/b/a Verizon Wireless (“Verizon”), by encouraging and facilitating the implementation, operation, use, sale, and offer for sale of the Accused Products in Verizon’s cellular network, as set forth under 35 U.S.C. § 271(b). Such inducement has been committed with knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the ’142 Patent.

110. Indeed, Defendant has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, designing, marketing, selling, supplying, configuring, integrating, testing, supporting, and providing technical assistance for the Accused Products, and by creating and disseminating product documentation, technical specifications, deployment guides, user manuals, and other instructional materials that teach and encourage its customers, such as Verizon, to deploy, integrate, configure, operate, maintain, and use the Accused Products in Verizon’s cellular network in the manner alleged herein to infringe the ’142 Patent. For example, Defendant’s product webpages and marketing materials describe its 5G RAN portfolio and promote the deployment and operation of the Accused Products by mobile network operators in commercial 5G cellular

networks.[57] Defendant further publishes materials describing and promoting the deployment, integration, interoperability, operation, and continued evolution of the Accused Products in Verizon's cellular network, including Defendant's testing, implementation assistance, technical support, and software solutions provided in connection with such deployments.[58] These materials describe the capabilities, functionality, deployment scenarios, interoperability, and performance benefits of the Accused Products, promote their implementation and operation in commercial 5G cellular networks, and encourage mobile network operators, such as Verizon, to deploy and operate the Accused Products as part of its commercial cellular network.

111. Defendant's affirmative steps to induce infringement further include collaborating with its customers, such as Verizon, during network planning, deployment, integration, interoperability testing, optimization, software implementation and updates, maintenance, troubleshooting, and ongoing operation of the Accused Products, including by providing engineering services, technical support, implementation assistance, software releases and updates, and other customer support that facilitate, enable, and encourage Verizon's implementation, operation, use, sale, and offer for sale of the Accused Products in its cellular network in an infringing manner.

---

[57] *See, e.g.*, https://www.samsung.com/global/business/networks/products/radio-access/5g-ran/; https://www.samsung.com/global/business/networks/products/radio-access/massive-mimo-radio/.

[58] *See, e.g.*, https://www.samsung.com/global/business/networks/insights/press-release/verizon-selects-samsung-for-5g-commercial-launch; https://www.samsung.com/global/business/networks/insights/press-release/0213-samsung-verizon-and-keysight-advance-commercial-open-ran-with-extensive-conformance-and-interopera-ility-testing/; https://www.samsung.com/global/business/networks/insights/press-release/0122-samsung-expands-5g-technology-leadership-with-fully-virtualized-commercial-5g-ran/.

112. By providing the Accused Products, together with the foregoing, Defendant knows (and has known), or has been willfully blind to the fact, that its actions have actively induced, and continue to actively induce, infringement of the ’142 Patent by Verizon, including by encouraging and facilitating Verizon’s deployment, configuration, integration, operation, and maintenance of the Accused Products in the manner alleged herein to infringe the ’142 Patent.

***Damages***

113. Smart RF has been damaged as a result of Defendant’s infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates Smart RF for Defendant’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

114. Despite having knowledge of the ’142 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the ’142 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant’s infringing activities relative to the ’142 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Smart RF’s rights with respect to the ’142 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## CONCLUSION

115. Smart RF is entitled to recover from Defendant the damages sustained by Smart RF as a result of Defendant’s wrongful acts and infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

116. Smart RF has incurred and will incur attorneys’ fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case

within the meaning of 35 U.S.C. § 285, and Smart RF is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

117. Smart RF hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

118. Smart RF respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Smart RF the following relief:

(i) A judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(ii) A judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Defendant, requiring Defendant to pay enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred by Smart RF in prosecuting this action as set forth under 35 U.S.C. § 285;

(iii) A judgment that Defendant account for and pay to Smart RF all damages and costs incurred by Smart RF because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv) A judgment that Defendant account for and pay to Smart RF a reasonable, ongoing, post-judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

(v) A judgment that Smart RF be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

(vi) A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and an award of Smart RF's reasonable attorneys' fees; and

(vii) Such other and further relief as the Court deems just and equitable.

Dated: September 3, 2026

Respectfully submitted,

<u>*/s/ Patrick J. Conroy*</u>
**Patrick J. Conroy**
Texas Bar No. 24012448
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
jon@nelbum.com
nathan@nelbum.com

**ATTORNEYS FOR PLAINTIFF SMART RF INC.**